SAMUEL DONNELL v. THOMAS E. COOKE and others.

An administrator, who delivers the residue of an estate to the distributees, has no equity to call upon them to refund the amount of a debt paid by him afterwards, of which he had no notice at the time he delivered up the residue, unless he alleges and proves *special circumstances* showing at he was in no default, and relieving him from the imputation of negligence.

Where the case showed that the plaintiff knew at the time, that his intestate had been *administrator* as well as *guardian* of a certain estate, and that notes due *to* him as *administrator* were still outstanding; and in excuse of his ignorance of the existence of a debt of some $1,400 due by his intestate to such estate, he relied upon the fact that the Court records showed a settlement by the *guardian*, (such settlement including only the proceeds of a tract of land and a small amount of rent), *held*, especially as the records showed no settlement by the *administrator*, to have been gross negligence in him to pay over the residue to the distributees.

Where the existence of a fact *at a particular time* is important to a party, he must make a distinct allegation in regard to it in his pleading.

Parties seeking to be excused from the ordinary consequences of their actions, by reason of special circumstances, must exhibit candor and particularity in their statements concerning it.

·(*Alexander* v. *Fox* 2 Jon. Eq. 106; *Marsh* v. *Scarboro* 2 Dev. Eq. 551, cited and approved.)

BILL, set for hearing upon pleadings and proofs at Spring Term 1868, of the Court of Equity for GUILFORD, and at Fall Term transmitted to this Court.

The bill (filed in 1861) alleged that the plaintiff, as administrator of John Rhodes, had amongst other things, paid over, some years before, to the defendants, as distributees, the residue of the personal estate of his intestate; that in 1846 his intestate had been guardian of certain infants named Witty, and as such had charged himself with $680 as due to them, and plaintiff in 1850 and 1851, before completing his administration, paid to one Jesse Wheeler as succeeding guardian, that amount; that in 1860 it was discovered that Rhodes' guardian returns were incorrect, by some $1,400, and that thereupon the wards, by their guardian, brought suit against the plaintiff as

NOTE.—Judge Dick did not sit in this case, having formerly been of counsel therein.

administrator, and compelled him to pay them out of his own pocket $1,430.54 and costs; that he had demanded this amount, making proper explanations, &c., from the defendants, but they had refused to pay, &c. The prayer was that the defendants should account and pay over, and for further relief.

The answers put the plaintiff upon strict proof of his claim.

The other facts necessary to an understanding of the opinion, are set forth therein.

*Gorrell*, for the plaintiff.

This case is within the exceptions to the rule that an executor who takes no refunding bond has no equity to compel legatees to refund in case of subsequent payment of debts. *Marsh* v. *Scarboro* 2 Jon. Eq. 106; *Stark* v. *Williams* 3 Jon. Eq. 13; *Lambert* v. *Hobson, Ib.* 424.

*Scott & Scott, contra.*

PEARSON, C. J. An administrator who hands over the residue of the estate to the distributees, has no equity to call upon them to refund, on the ground that he afterwards pays a debt of the intestate, of which he had no notice at the time he handed over the estate; unless he alleges and proves special circumstances, showing that he was in no default, and relieving him from the imputation of negligence. This rule rests on two grounds—it is the duty of an administrator to make diligent inquiry as to the debts of his intestate, so that when he hands over the surplus, he can settle the estate, and not leave it subject to be overhauled, with additional costs. In the second place, after the distributees have come into the possession of the property, and dealt with it as their own, an unexpected call to refund, especially if it be many years afterwards, may subject them to as great inconvenience and loss, as the administrator was subjected to by having the claim to pay in the first instance: so the loss should rest on him, unless he can show that the matter occurred without any default on his part. In *Alexander* v. *Fox*, 2 Jones' Eq. 106, relief was

granted on special circumstances, among others, that the testator, by his will, had set apart a fund for the payment of his debts, which, he says in his will, is amply sufficient so as to leave a surplus, and actually goes on to dispose of such supposed surplus. In *Marsh* v. *Scarboro*, 2 Dev. Eq. 551, relief was refused, on the ground that the allegations of the bill were too vague, and that it did not aver special circumstances so distinctly, " as to enable the defendant to put in issue, the matters upon which that right depends." In our case, the bill is fatally defective, in this: the allegations are too vague. The bill is drafted upon the idea that the plaintiff is entitled to relief, provided, he handed over the residue of the estate without knowing of the debt which he was afterwards forced to pay. It alleges that his intestate had been the guardian of the children of one Witty, that in 1850, or 1851, he and one Wheeler, who was the guardian of the children, settled according to the returns of his intestate, by which there was a balance of $680 due to the wards, which he paid, and that he and said Wheeler, at that time, both honestly supposed that $680 was all that was due, but that afterwards, in 1860, it was discovered that the guardian returns of his intestate were erroneous, and that there was a further sum of some $1400 due to the wards, which he was forced to pay. This is the allegation; no one can read it without being impressed with the conviction that it gives no satisfactory account of the matter, and no key by which to explain how it happened, that an error for so large a sum, should have occurred. No one supposes that the plaintiff knew of the error, when he handed over the estate; but the point is, how did it happen that he did not know of it? His duty imposed due diligence—do these vague allegations show that he used it? We think they do not.

But the bill is also fatally defective in this: The fact that his intestate had been the administrator of Witty, as well as the guardian of his children, which is a key to open the error, is *unfairly concealed*, and no intimation of it whatever, is given in the bill. Here is "*suppressio veri*," which excludes one

who is seeking relief upon an equity based on special circumstances relieving him from the imputation of negligence. Why was this fact not disclosed by the bill? This is unfair dealing with the Court.

The bill is also fatally defective in this: There is no averment that *at the time* the plaintiff handed over the estate to the distributees, he did not know the fact, that his intestate had been the administrator of Witty, as well as the guardian of his children. As is said in *Marsh* v. *Scarboro*, "this averment was necessary to enable the defendant to put the matter in issue," so, in the absence of an averment to the contrary, we must assume that, when the plaintiff settled with Wheeler, he knew the fact that his intestate had been the administrator of Witty. Had he ventured to put the matter in issue by an averment to the contrary, besides the general fact that the parties all lived in the same county, that the appointment of the plaintiff's intestate as administrator and also as guardian, was made by the same court, and that his returns as administrator and as guardian, were filed in the same office, there is direct proof that, after the death of the co-administrator of the plaintiff, several notes payable to his intestate as *administrator* of Witty, were put into the hands of the plaintiff, before he settled the estate: so he is directly fixed with notice of the fact, at the time he paid over the balance set out in the guardian return, that his intestate had also been the administrator. The question is narrowed down to this: it appears on the face of the return made by his intestate as guardian, that he only charges himself with the price of a tract of land, and a small amount received as rent, so he was obliged to know, that the guardian return did not contain the account of his intestate as administrator; and if he had taken the trouble to look at the return of his intestate as administrator of Witty, on file in the clerk's office, he would have seen that there was a balance to be accounted for on that score, as well as the price of the land and rent; in other words, he would have seen that his intestate had not closed his account as administrator, by charging himself as guardian with the

amount due as administrator, and taking credit on his administration account—in fact, he had made no *settlement* of his administration, and the matter was left upon his returns as administrator, and upon his returns as guardian; and we declare our opinion to be, that it was gross negligence on the part of the plaintiff, to settle with Wheeler on the footing that the return made by Rhodes as guardian covered his whole liability.

Let the bill be dismissed with costs.

PER CURIAM.                                      Bill dismissed.